UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHAD ROMERO, individually and on behalf of all others similarly situated, § § § | CASE NO. 1:18-CV-10702-PBS |
| Plaintiff, § § | JURY TRIAL DEMANDED |
| v. § § | COLLECTIVE ACTION |
| CLEAN HARBORS ENVIRONMENTAL SERVICES, INC., CLEAN HARBORS INDUSTRIAL SERVICES, INC., and CLEAN HARBORS SURFACE RENTALS USA, INC. § § § § § § § | |
| Defendants. | |

## SECOND AMENDED COMPLAINT

### SUMMARY

1. Chad Romero (Romero) brings this lawsuit[1] to recover unpaid overtime wages and other damages from Clean Harbors Surface Rentals USA, Inc. (Clean Harbors) under the Fair Labor Standards Act (FLSA).

2. Romero and the other workers like him regularly worked for Clean Harbors in excess of 40 hours each week.

3. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4. Instead of paying overtime as required by the FLSA, Clean Harbors improperly classified Romero and those similarly situated as independent contractors and paid them a daily rate with no overtime compensation.

---

[1] Pursuant to the Court's Electronic Order (ECF No. 24) granting the relief sought in ECF No. 23, leave of Court is not required to file this Second Amended Complaint.

5. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

8. Clean Harbors' headquarters is located in this District and Division.

## THE PARTIES

9. Romero worked for Clean Harbors from July 2016 to February 2018.

10. Throughout his employment with Clean Harbors, he was paid a day-rate with no overtime compensation.

11. Throughout his employment, Clean Harbors classified Romero as an independent contractor.

12. The relationship between Romero and Clean Harbors rises to the level of an employee-employer relationship.

13. For example, Clean Harbors dictated Romero's rate of pay.

14. Romero reported directly to Clean Harbors who coordinated his work.

15. Information related to Romero's pay rate is reflected in Clean Harbors' pay documents.

16. Clean Harbors required Romero to go through a contracting company to be paid.

17. Clean Harbors set Romero's schedule.

18. Clean Harbors decided Romero's work locations.

19. Clean Harbors required Romero to follow its policies and procedures.

20. Clean Harbors prohibited Romero from working for other employers while working

for Clean Harbors.

21. Clean Harbors precluded Romero from subcontracting out his work at Clean Harbors.

22. Romero did not provide unique services indicative of a third-party contractor.

23. Romero was a Solids Control Tech for Clean Harbors. He operated Clean Harbors' equipment to separate out particles, debris, and other solids so that the drilling fluids could be reused in the drilling process.

24. Romero's consent to be a party plaintiff is on file with the Court. ECF No. 9.

25. Romero brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid pursuant to Clean Harbors' day-rate system.

26. Clean Harbors paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 in a workweek.

27. The class of similarly situated workers or potential class members sought to be certified is defined as follows:

> **All workers employed by, or working on behalf of, Clean Harbors during the past 3 years who were classified as independent contractors and paid a day-rate ("Day Rate Workers").**

28. **Clean Harbors Surface Rentals USA, Inc.** are headquartered in Norwell, Massachusetts and conduct substantial business activities throughout the United States. Clean Harbors has been served and an appearance has been made by its attorney.

### COVERAGE UNDER THE FLSA

29. At all times hereinafter mentioned, Clean Harbors has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30. At all times hereinafter mentioned, Clean Harbors has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

31. At all times hereinafter mentioned, Clean Harbors has been part of an enterprise

engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000.00 (exclusive of excise taxes at the retail level which are separately stated).

32. Clean Harbors' workers routinely handle goods or materials – such as hard hats, tools, steel toe shoes, automobiles, and cell phones – that have moved in, or were produced for, interstate commerce.

33. At all times hereinafter mentioned, Romero and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

34. As will be shown through this litigation, Clean Harbors treated Romero (and indeed all of its workers that it classified as independent contractors and paid a nonnegotiable day rate to without overtime compensation) as employees.

35. Clean Harbors' misclassification of Romero and the Day Rate Workers as independent contractors does not alter their status as employers for purposes of this FLSA collective action.

**FACTUAL COLLECTIVE ACTION ALLEGATIONS**

36. Clean Harbors is North America's leading provider of environmental, energy, and industrial services. About Us. Company Overview. https://www.cleanharbors.com/about-us (last visited August 6, 2018). Clean Harbors' customer base, includes a majority of the Fortune 500 companies, across the chemical, energy, manufacturing, and additional markets, as well as numerous government agencies *Id.* Based in Massachusetts, Clean Harbors operates throughout the United States, Canada, Mexico and Puerto Rico. *Id.*

37. In order to provide services to many of its customers, Clean Harbors contracts with

certain companies to provide it with employees to perform the necessary work.

38. Romero and the Day Rate Workers reported directly to Clean Harbors.

39. Over the past three years, Clean Harbors employed hundreds of individuals – including Romero – as Solid Control Techs (or similar positions) throughout the United States.

40. Many of these individuals worked for Clean Harbors on a day-rate basis without overtime and were classified as independent contractors.

41. Romero and the Day Rate Workers worked for Clean Harbors under this pay scheme.

42. Romero and the Day Rate Workers did not receive a salary. If Romero and the Day Rate Workers did not work, they did not get paid.

43. Romero and the Day Rate Workers received a day rate.

44. Romero received a day rate of $275.00 for each approved day he worked for Clean Harbors when he began working for Clean Harbors.

45. Towards the end of his employment with Clean Harbors, Romero received a day rate of $325.00 for each approved day he worked for Clean Harbors.

46. Romero and the Day Rate Workers received the day rate regardless of the number of hours they worked in excess of 40 hours in a work week.

47. Romero and the Day Rate Workers did not receive overtime pay.

48. Romero and the Day Rate Workers are subjected to the same or similar pay practices.

49. Romero and the Day Rate Workers worked overtime for Clean Harbors.

50. Romero and the Day Rate Workers often worked at least 12 hours a day, often 7 days a week.

51. In other words, Romero would regularly work at least 84 hours in one week.

52. Without the job performed by Romero and the Day Rate Workers, Clean Harbors would not be able to complete its business objectives.

53. Romero and the Day Rate Workers relied on Clean Harbors for work and compensation.

54. Romero and the Day Rate Workers worked in accordance with the schedule set by Clean Harbors.

55. Romero and the Day Rate Workers were not permitted by Clean Harbors to subcontract out the work they are assigned to do by Clean Harbors.

56. Romero and the Day Rate Workers must follow Clean Harbors' policies and procedures.

57. Romero and the Day Rate Workers' work must adhere to the quality standards put in place by Clean Harbors.

58. Romero and the Day Rate Workers did not substantially invest in the tools required to complete the overall job to which they were assigned.

59. Romero and the Day Rate Workers did not possess any specialized or unique skill set.

60. Romero and the Day Rate Workers did not market their services, while employed by Clean Harbors.

61. Romero and the Day Rate Workers worked exclusively for Clean Harbors during the relevant time period.

62. Romero and the Day Rate Workers did not incur operating expenses like rent, payroll, marketing, and insurance.

63. Clean Harbors set Romero and the Day Rate Workers' work schedule which prohibited them from working other jobs for other companies while working on jobs for Clean Harbors.

64. At all relevant time, Clean Harbors maintained control, oversight, and direction of Romero and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining,

timekeeping, payroll, and other employment practices.

65. Clean Harbors knows Romero and the Day Rate Workers worked more than 40 hours in a week.

66. Indeed, Clean Harbors required Romero and the Day Rate Workers to work substantial overtime without overtime compensation.

67. Clean Harbors classified Romero and the Day Rate Workers as exempt from the overtime requirements, as independent contractors.

68. Clean Harbors knows these workers are not exempt from the FLSA's overtime provisions.

69. Nonetheless, Clean Harbors failed to pay Romero and the other Day Rate Workers overtime for those hours exceeding 40 in a workweek.

70. Clean Harbors is well aware of the overtime requirements of the FLSA.

71. The Department of Labor's Wage and Hour Division has found multiple violations against Clean Harbors.

72. Clean Harbors knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

**FLSA VIOLATIONS**

73. As set forth herein, Clean Harbors has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing workers for workweeks longer than 40 hours without paying them overtime.

74. Clean Harbors knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Workers overtime compensation.

75. Clean Harbors' failure to pay overtime compensation to these workers was neither reasonable, nor was the decision not to pay overtime made in good faith.

76. Accordingly, Romero and the Day Rate Workers are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

77. Romero demands a trial by jury.

## RELIEF SOUGHT

78. WHEREFORE, Romero prays for judgment against Clean Harbors as follows:

   a. An Order certifying a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated workers with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order pursuant to Section 16(b) of the FLSA finding Clean Harbors liable for unpaid back wages due to Romero and the Day Rate Workers for liquidated damages equal in amount to their unpaid compensation;

   c. For an Order appointing Romero and his counsel as Class Counsel to represent the interests of the FLSA class;

   d. For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

   e. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
    **Michael A. Josephson**
    State Bar No. 24014780
    (admitted *pro hac vice*)
    **Richard M. Schreiber**
    State Bar No. 24056278
    (admitted *pro hac vice*)
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    rschreiber@mybackwages.com

AND

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    (pending *pro hac vice*)
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

AND

    **Phillip J. Gordon**
    Mass. BBO# 630989
    **Kristen M. Hurley**
    Mass. BBO# 658237
    **GORDON LAW GROUP, LLP**
    585 Boylston St.
    Boston, MA 02116
    617-536-1800 – Telephone
    617-536-1802 – Facsimile
    pgordon@gordonllp.com
    khurley@gordonllp.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

   I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 13, 2018.

                */s/ Michael A. Josephson*
                Michael A. Josephson

## **CERTIFICATE OF CONFERENCE**

   Pursuant to ECF No. 23, Plaintiffs' Counsel Conferred with Defense Counsel regarding the relief sought herein and it is Unopposed to the filing of this motion.

                */s/ Michael A. Josephson*
                Michael A. Josephson