## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>CHAD ROMERO, Individually )<br>and on Behalf of All Others )<br>Similarly Situated, )<br> )<br>      Plaintiff, )<br> )<br> )<br>   v. )<br> )<br>CLEAN HARBORS SURFACE RENTALS )<br>USA, INC., )<br> )<br>      Defendant. )<br>_____) | Civil Action<br>No. 18-10702-PBS |

### MEMORANDUM AND ORDER

March 21, 2019

Saris, C.J.

### INTRODUCTION

Plaintiff Chad Romero ("Romero") brings this action against Defendant Clean Harbors Surface Rentals USA, Inc. ("Clean Harbors") under the federal Fair Labor Standards Act ("FLSA") to collect unpaid overtime wages on behalf of himself and other similarly situated individuals who worked for Clean Harbors. Two motions are before the Court: (1) Clean Harbors' motion to dismiss for failure to join a required party under Rule 19 of the Federal Rules of Civil Procedure, and (2) Romero's motion to conditionally certify a collective action under the FLSA.

1

After hearing, the Court **DENIES** Clean Harbors' motion to dismiss (Dkt. No. 38) and **ALLOWS** Romero's motion for conditional certification (Dkt. No 40).

## FACTUAL BACKGROUND

When all reasonable inferences are drawn in favor of the non-moving party, the Second Amended Complaint alleges the following facts, many of which are disputed.

### I.   Parties

Romero worked for Clean Harbors from July 2016 to February 2018. He was a solids control technician, operating Clean Harbors' equipment to separate particles and debris from fluids used for oil and natural gas drilling so the fluids could be reused in the drilling process.

Clean Harbors is headquartered in Norwell, Massachusetts and operates throughout the United States, Canada, and Mexico. It provides environmental, energy, and industrial services to companies in the chemical, energy, and manufacturing markets, including the oil and natural gas industry. Clean Harbors contracts with third-party staffing companies to supply workers for certain projects.

### II.  Employment Relationship

Romero regularly worked over 40 hours a week for Clean Harbors. Rather than pay overtime, Clean Harbors classified employees like Romero as independent contractors and paid them a

2

daily rate, or a "day rate," with no overtime pay. Romero was paid $275 per day when he started working for Clean Harbors and $325 per day by the time he left, regardless of how many hours over 40 he worked in a given week. He and other day-rate workers often worked at least 12 hours a day, seven days a week—or more than 84 hours per week.

Romero's alleges that his classification as an independent contractor was improper because, in fact, Clean Harbors was his employer. Clean Harbors directed his rate of pay; he reported directly to Clean Harbors, which coordinated his work and set his schedule; Clean Harbors dictated his work locations; he was required to follow Clean Harbors' policies and procedures; and Clean Harbors prohibited him from working for other employers or subcontracting his work for Clean Harbors. Although Clean Harbors "required Romero to go through a contracting company to be paid," information related to his pay rate is reflected in its payroll records. The same is true of all other solids controls workers who worked for Clean Harbors.

Clean Harbors not only knew its workers put in more than 40 hours per week, but it also required them to do so. Clean Harbors failed to pay these workers overtime despite knowing that they were not exempt from the FLSA's overtime provisions.

III.  **Procedural History**

An initial complaint was filed in this action in April 2018 and an amended complaint was filed in August 2018, both by another Clean Harbors solids control worker, Trent Metro ("Metro"). The initial and amended complaints named additional entity defendants from the same corporate family as Clean Harbors. In August 2018, Metro voluntarily dismissed from the case the other entity defendants, leaving Clean Harbors as the only defendant. In September 2018, due to the discovery of an arbitration agreement in his employment contract, Metro requested that his individual claims be dismissed from the action and that he be substituted as named plaintiff. On September 13, 2018, with leave of the Court, Romero filed the Second Amended Complaint, which substituted him as named plaintiff in the place of Metro.

On November 30, 2018, Clean Harbors moved to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 19 for failure to join a required party. On the same day, Romero moved to conditionally certify an FLSA collective action. On December 21, 2018, the parties opposed each other's motions, and, on January 4, 2019, the parties replied in support of their respective motions. A hearing was held on both motions on January 8, 2019.

### Motion to Dismiss

## I.    Legal Standard

The first step in a Rule 19 analysis is to determine whether an absent party is a "required party" under Rule 19(a). Bacardi Int'l Ltd. v. V. Suárez & Co., 719 F.3d 1, 10 (1st Cir. 2013). There are three ways to qualify as required party: (1) if, in the party's absence, the court cannot afford complete relief among the existing parties; (2) if disposing of the case without the absent party will, as a practical matter, impair or impede the absent party's ability to protect a claimed interest; or (3) if deciding the case in the party's absence will leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of a claimed interest in the case. Fed. R. Civ. P. 19(a). The burden is on the party raising a Rule 19 defense to show that the absent party is needed for a just adjudication. See In re Veluchamy, 879 F.3d 808, 819 n.4 (7th Cir. 2018).

If the Court finds that the absent party is a required party, it must then determine whether joinder is feasible. See Fed. R. Civ. P. 19(b). If joinder is not feasible, the Court must next determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 18 (1st Cir. 2008) (quoting Fed. R. Civ. P. 19(b)). In other words, the

Court must determine whether the absent party is "indispensable" such that there can be "no viable lawsuit without the missing party." Id. at 20. Under Rule 19(b), the Court considers four factors in making this assessment: (1) the extent to which a judgment rendered in the party's absence might prejudice that party or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the party's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b). If the absent party is "indispensable," then the case must be dismissed. Picciotto, 512 F.3d at 16.

## II.  Discussion

### A. Materials Outside the Pleadings

Romero raises the threshold issue of whether it is appropriate to consider materials outside the pleadings in deciding a Rule 19 motion. Specifically, Romero objects to Clean Harbors' reliance on two declarations submitted in support of its motion to dismiss.

The first declaration is made by Nathan McCullough ("McCullough"), a branch manager responsible for Clean Harbor's Wyoming operations, from which the following information is drawn. The demand for workers in the oil and gas industry

rapidly rises and falls. In order to meet these fluctuating
needs, Clean Harbors contracts with a variety of staffing
companies to supplement its workforce on an as-needed basis. One
of these staffing companies was Drilling Professionals, LLC
("Drilling Professionals"), which contracted directly with
Romero. The terms of Clean Harbors' agreements with these
staffing companies vary widely, although McCullough does not
specify how. Clean Harbors negotiated "rates for services" with
Drilling Professionals and other staffing companies, but never
directly negotiated terms with any supplied worker. Workers
received their pay and tax-related documents directly from the
staffing companies.

 Romero worked at several drilling sites in Wyoming operated
by one of Clean Harbors' clients, Ultra Petroleum Corp. ("Ultra
Petroleum"). Drilling Professionals conducted a background check
and drug test on Romero before assigning him to a work site.
Romero traveled to the site in his own vehicle and operated
equipment that Ultra Petroleum leased from Clean Harbors (and
other third parties). Clean Harbors did not pay Romero or
determine Romero's pay. Rather, Drilling Professionals invoiced
Clean Harbors for the work Romero performed. Clean Harbors
submitted three such invoices from December 2016 and January
2017 as exhibits to McCullough's declaration.

The second declaration is made by Clean Harbors' counsel, who avers that Drilling Professionals is a Texas limited liability corporation with its principal place of business in Midland, Texas. Clean Harbors also submitted as an exhibit to the declaration a document from the website of the Texas Secretary of State showing that Drilling Professionals is a registered Texas business.

Clean Harbors has styled its Rule 19 motion as a motion for judgment on the pleadings pursuant Federal Rule of Civil Procedure 12(c). In deciding motions for judgment on the pleadings, the Court cannot consider materials outside the pleadings without converting the motion into one for summary judgment. See DeMayo v. Nugent, 517 F.3d 11, 19 (1st Cir. 2008). However, a party also may move to dismiss for failure to join a party under Rule 19 pursuant to Rule 12(b)(7). Fed. R. Civ. P. 12(b)(7). Such a motion requires the Court to "accept the allegations contained in the plaintiff's complaint as true." J&J Sports Prods. Inc. v. Cela, 139 F. Supp. 3d 495, 499 (D. Mass. 2015). But the Court is not limited to the pleadings and may consider other relevant extra-pleading evidence, such as declarations or affidavits. Id. Here, the Court will treat Clean Harbors' Rule 19 motion as arising under Rule 12(b)(7) and consider the declarations that Clean Harbors submitted with its motion.

## B. Rule 19 Analysis

Clean Harbors argues that Drilling Professionals is a
required party because Romero's FLSA claim will require the
Court to determine the nature of the employment relationship
involving Romero, Clean Harbors, <u>and</u> Drilling Professionals.
Clean Harbors further argues that joinder is not feasible
because the Court lacks personal jurisdiction over Drilling
Professionals and that Drilling Professionals is an
indispensable party pursuant to Rule 19, so the case must be
dismissed. This argument falls at the first hurdle.

The parties do not dispute that Romero's FLSA claim seeking
backpay requires him to show that he was employed by Clean
Harbors. <u>See</u> <u>Manning v. Bos. Med. Ctr. Corp.</u>, 725 F.3d 34, 43
(1st Cir. 2013) (setting out basic elements of FLSA claim). What
the parties do dispute is what the fact-finder must decide in
order to determine whether an employment relationship existed
between Clean Harbors and Romero. Clean Harbors assumes that in
making this determination the fact finder necessarily must
decide whether an employment relationship also existed between
Romero and Drilling Professionals, but this is not the law.

For the purposes of determining whether a worker is the
employee of a particular alleged employer under the FLSA, the
Court must look to the totality of the circumstances, including
whether the alleged employer: (1) had the power to hire and fire

9

the employee, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 675 (1st Cir. 1998). Multiple employers may be held liable for the same conduct. Id. at 675 ("The FLSA contemplates several simultaneous employers, each responsible for compliance with the Act."). But the employment relationship test is the same whether there is one putative employer or multiple. See id. Crucially, the test is applied to each putative employer individually. See Hamilton v. Partners Healthcare Sys., Inc., 209 F. Supp. 3d 379, 31 (D. Mass. 2016) ("[J]oint employer status recognizes that an employee can have multiple discrete but related employers, not that employment status can be ineffable."), aff'd, 879 F.3d 407 (1st Cir. 2018). While the analysis of the alleged employment relationship between Romero and Clean Harbors likely would consider facts about Drilling Professionals' relationship with Romero, the fact finder does not need to decide whether an employment relationship also existed between Drilling Professionals and Romero.

Once this assumption falls away, Clean Harbors' various arguments that Drilling Professionals is a required party lose their persuasive force. Clean Harbor's main argument for dismissal is essentially a merits argument. Relying on its

declarations, Clean Harbors argues that it was not Romero's employer and, to the extent Romero was not an independent contractor and had an employer, that employer was Drilling Professionals. This argument ultimately may be a successful one, but it does not provide a basis for dismissal under Rule 19. That Romero might have named the wrong defendant—or might not have a claim at all—does not mean he cannot receive complete relief from Clean Harbors. See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Municipality of San Juan, 773 F.3d 1, 13 (1st Cir. 2014). It just means that he might not be entitled to relief. Further, if the ultimate fact finder is persuaded by Clean Harbors' argument, that does not mean it also has to decide that Drilling Professionals was Romero's employer.

Alternatively, Clean Harbors argues that it could have been a joint employer together with Drilling Professionals. Even if there were a joint employer relationship, that would not require joinder of Drilling Professionals either. See Temple v. Synthes Corp., 498 U.S. 5, 7 (1990) (per curiam) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."). Clean Harbors thinks it has found a way around this rule because under the FLSA it is not necessarily the case that joint employers are held joint and severally liable. Specifically, Clean Harbors points out that Romero's claims to a three-year statute of limitations and

11

liquidated damages depend on a finding that his employer(s) willfully violated the FLSA. Since it is possible the fact finder might decide that Drilling Professionals acted willfully but not Clean Harbors, it is also possible that only Drilling Professionals would be liable for the additional year of damages and liquidated damages. Clean Harbors argues that in this specific, hypothetical scenario Romero would not recover as much in damages if Drilling Professionals is not joined. But this misses the point of Rule 19—"complete relief" does not require the joinder of all parties who might enhance plaintiff's damages award. See Bacardi, 719 F.3d at 10 (finding complete relief available even though a dispute with an absent party might be left unresolved). Under Rule 19, "[r]elief is complete when it meaningfully resolves the contested matter as between the affected parties." Watchtower, 773 F.3d at 13. The absence of Drilling Professionals does not in any way prevent the Court from resolving Romero's claims against Clean Harbors, either for three years of unpaid overtime or for liquidated damages.

Finally, Clean Harbors claims this action threatens to impair Drilling Professionals' contractual relationship with Romero, but this argument too is unpersuasive. Since the fact finder does not need to decide any issue regarding the employment relationship between Drilling Professionals and Romero, there is no risk that a judgment in this action might

indirectly reform or otherwise invalidate the contract between them. In general, a party to a contract that is not at issue in the litigation is not a necessary party, even if as a practical matter the absent party's contractual interests might be affected by the outcome of the litigation. Bos. Car Co. v. Acura Auto. Div., Am. Honda Motor Co., 127 F.R.D. 434, 435 (D. Mass. 1989). And even if this did make Drilling Professionals a necessary party, it still would not make the company an indispensable one. See Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 677 (1st Cir. 1994) (determining that a contractual party was dispensable even though resolution of separate tort claims might affect its rights or obligations under the contract). The contract between Drilling Professionals and Romero may be relevant evidence in this case, but its existence does not render Drilling Professionals a necessary party pursuant to Rule 19(a).

Accordingly, because Drilling Professionals is not a necessary party under Rule 19(a), Clean Harbors' motion to dismiss is denied.

## Motion for Conditional Certification

### I.   Legal Standard

There are three basic elements to an FLSA claim: (1) the plaintiffs were employed by the defendant; (2) the work involved interstate activity; and (3) the plaintiffs performed work for

13

which they were under-compensated. <u>Manning</u>, 725 F.3d at 43. A claim for unpaid overtime wages must also "demonstrate that the plaintiffs were employed 'for a workweek longer than forty hours' and that any hours worked in excess of forty per week were not compensated 'at a rate not less than one and one-half times the regular rate.'" <u>Id.</u> (quoting 29 U.S.C. § 207(a)(1)). Day-rate workers generally are entitled to overtime pay. <u>See</u> 29 C.F.R. § 778.112 (describing method for calculating overtime rate for day-rate workers).

The FLSA allows employees to band together to enforce their rights by initiating or joining a collective action. <u>See</u> <u>Cunha v. Avis Budget Car Rental, LLC</u>, 221 F. Supp. 3d 178, 181 (D. Mass. 2016) (quoting 29 U.S.C. § 216(b)). Unlike a class action under Federal Rule of Civil Procedure 23, collective actions under the FLSA "require similarly situated employees to affirmatively opt-in and be bound by any judgment." <u>Id.</u> (quotation omitted). To facilitate this opt-in mechanism, courts have developed a certification process for plaintiffs seeking to bring FLSA collective actions. <u>See</u> <u>Kane v. Gage Merch. Servs., Inc.</u>, 138 F. Supp. 2d 212, 214 (D. Mass. 2001) (citing <u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 169 (1989)). Although the First Circuit has not prescribed a specific certification procedure, "most courts—including most district courts in this circuit—follow a two-step approach." <u>Cunha</u>, 221 F. Supp. 3d at

181-82 (citing <u>Trezvant v. Fidelity Emp'r Servs. Corp.</u>, 434 F. Supp. 2d 40, 43 (D. Mass. 2006)).

First, "the court makes an initial determination of whether the potential class should receive notice of the pending action." <u>Trezvant</u>, 434 F. Supp. 2d at 42. "[T]his determination is made using a fairly lenient standard, which typically results in conditional certification." <u>Id.</u> at 43. The plaintiff must show only "that there is 'some factual support'—as opposed to mere allegations—that the potential plaintiffs are similarly situated." <u>Cunha</u>, 221 F. Supp. 3d at 182.

Second, "after discovery is complete, the court makes a final 'similarly situated' determination." <u>Trezvant</u>, 434 F. Supp. 2d at 42. Pertinent factors at this stage include: (1) any disparate factual and employment settings—for example, whether plaintiffs were employed in the same corporate department, division, and location; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. <u>Id.</u> at 45 (citations omitted). This case is only at the first step.

## II.  <u>Discussion</u>

### A. Certification

Romero requests that the Court conditionally certify the following collective action group:

> All solid control workers employed by, or working on
> behalf of, Clean Harbors during the past 3 years who
> were classified as independent contractors and paid a
> day-rate.

Dkt. No. 41 at 6. In support of this request, Romero has

submitted four declarations from prospective group members—one

from Romero and three from other solids control workers who

worked for Clean Harbors. See Dkt. No. 41 Ex. Nos. 1-4.

The declarations all contain substantially similar

assertions that track the allegations in the Second Amended

Complaint. They claim that the technicians were classified as

independent contractors, but in fact Clean Harbors scheduled the

days and hours that the technicians worked, provided them with

necessary equipment to perform their work, instructed them on

how to perform their duties, required them to comply with Clean

Harbors' company policies, and supervised their performance. The

technicians performed substantially similar job duties,

including ensuring the safe operation of drilling site

equipment, completing required safety documentation, operating

solids and waste management equipment, and setting up and

tearing down centrifuges. Technicians were not allowed to

subcontract out their job assignments to other workers.

The declarations also state that Clean Harbors paid a flat

day rate (between $275 and $300 per day), with no guaranteed

money, no salary, and no overtime. Yet, the solids control

workers worked 12-hour shifts and regularly put in more than 40 hours per week. They were also on-call 24 hours a day while living in a trailer at the job site, which was paid for by Clean Harbors. Such arrangements were typical for these workers, and the workers believe the failure to pay overtime to day-rate workers is a standard company practice.

These assertions satisfy the "modest factual showing" required at step one of the FLSA certification procedure. Trezvant, 434 F. Supp. 2d at 43. The declarations support Romero's allegation that a substantial number of technicians were employees of Clean Harbors and did not receive required overtime pay as the result of a standard company practice. Courts regularly allow conditional certification based on similar factual materials. See, e.g., Torrezani v. VIP Auto Detailing, Inc., 318 F.R.D. 548, 557-58 (D. Mass. 2017) (allowing conditional certification of overtime collective action for group of auto detailers and cleaners); Tamez v. BHP Billiton Petroleum (Americas), Inc., 5:15-CV-330-RP, 2015 WL 7075971, at *6 (W.D. Tex. Oct. 5, 2015) (concluding that even "skeletal" and "cursory" declarations showing similarity were sufficient to warrant conditional certification); Scovil v. FedEx Ground Package Sys., Inc., 811 F. Supp. 2d 516, 519-20 (D. Me. 2011) (allowing conditional certification for overtime collective action based on affidavits from six FedEx drivers).

17

And collective actions on behalf of day-rate workers are also common. See, e.g., Tamez, 2015 WL 7075971, at *7; Whitlow v. Crescent Consulting, LLC, 322 F.R.D. 417, 422 (W.D. Okla. 2017).

Nevertheless, Clean Harbors makes several arguments against conditional certification, which are attacks on the similarity of the proposed group and the merits of Romero's claim. These arguments are unavailing.

The common thread running through Clean Harbors' arguments about the similarity of the proposed group is the fact that Clean Harbors did not contract with the solid controls workers directly but instead retained them through staffing companies like Drilling Professionals. For various reasons, Clean Harbors insists that this employment arrangement renders the proposed group members too dissimilar to support certification. Yet Romero has alleged that Clean Harbors had a common scheme of not paying day-rate workers overtime. He has supported his allegations with declarations from solids control workers from three different staffing companies. Indeed, the declarations describe a uniform set of policies and practices that applied to solids control workers regardless of their staffing company.[1] In

---

[1] Clean Harbors also complains that the declarations are "identical" and, therefore, they cannot support certification. Yet the Court's task is to decide whether the affected workers are "similarly situated." To this end, similarity in their declarations is to be expected and, in fact, supports certification.

view of this evidence, the differences identified by Clean Harbors do not defeat certification at this stage.

As for the merits of Romero's claim, courts generally do not consider merits questions when deciding whether to conditionally certify an FLSA collective action group. Montoya v. CRST Expedited, Inc., 311 F. Supp. 3d 411, 420 (D. Mass. 2018); see also Lichy v. Centerline Commc'ns LLC, 15-cv-13339-ADB, 2018 WL 1524534, at *4 (D. Mass. Mar. 28, 2018) (collecting cases). For example, Clean Harbors contends that Romero did, in fact, receive overtime pay, citing heavily redacted documents. Romero avers that he was not paid overtime. This is a pure factual dispute, which will either be reconciled in the course of discovery or decided by the ultimate fact finder, and it is not the type of dispute that the Court can resolve at the conditional certification stage.

Accordingly, the Court conditionally certifies the collective action group proposed by Romero.

### B. Notice

In addition to seeking conditional certification, Romero asks the Court to approve his proposed procedure for giving notice to the group. Romero's proposal has two main components. First, Romero attaches as an exhibit to his motion a "Notice of Unpaid Overtime Lawsuit" ("Proposed Notice and Consent Form"), which he requests the Court approve for dissemination to

potential group members. Second, he proposes a process and
schedule for providing notice to the group. ("Proposed Notice
Procedure"). Clean Harbors lodges several objections to Romero's
proposal. In an FLSA collective action, the Court has discretion
in helping to facilitate notice to potential group members. See
Kane, 138 F. Supp. 2d at 214 (citing Hoffmann-La Roche, 493 U.S.
at 169).

With respect to the Proposed Notice and Consent Form, Clean
Harbors objects that it "is improper in many respects" but only
offers a single example, that "it contains a one-sided and
misleading recitation of the facts." Dkt. No. 48 at 23 n.9. The
Court disagrees. Rather, the Proposed Notice and Consent Form
includes very little factual material and is a faithful
representation of Mr. Romero's allegations against Clean
Harbors. Therefore, the Court approves Romero's Proposed Notice
and Consent Form for use in contacting members of the
conditionally certified collective action group.[2]

Turning next to the Proposed Notice Procedure, the Court
agrees with Romero that email notice is appropriate in this case
because it is likely to be more effective than alternative

---

[2] The Court does note that Romero is not consistent in how he defines the
collective action group between the Second Amended Complaint ("workers"), the
motion for conditional certification ("solids control workers"), and the
Proposed Notice and Consent Form ("Solids Control Technicians"). Before
notice is sent to group members, the Proposed Notice and Consent Form should
be updated to accurately reflect the collective action group conditionally
certified by this order.

methods. See, e.g., Torrezani v. VIP Auto Detailing, Inc., 16-40009-TSH, 2017 WL 2951618, at *2 (D. Mass. May 31, 2017); Kane, 138 F. Supp. 2d at 216. For similar reasons, Romero's counsel is permitted to create a standalone webpage through which group members can electronically submit their consent forms. And Clean Harbors must provide Romero with the telephone numbers for potential group members. See Torrezani, 318 F.R.D. at 558 (requiring Defendant to provide telephone numbers for conditionally certified group of auto detailers). However, Romero has not supplied good reasons for why he needs the Social Security numbers for potential group members.[3] Clean Harbors does not have to provide Romero with this information.

Subject to the forgoing modifications, the Court approves Romero's Proposed Notice Procedure. The schedule contemplated by the Proposed Notice Procedure will take effect from the date of this order.

## ORDER

The Court **DENIES** Clean Harbors' motion to dismiss (Dkt. No. 38) and **ALLOWS** Romero's motion for conditional certification (Dkt. No 40). The Court conditionally certifies the following collective action group:

> All solids control workers employed by, or working on behalf of, Clean Harbors during the past 3 years who

---

[3] Indeed, at the hearing held on January 8, 2019, Romero's counsel conceded that they did not need this information to give notice to the group.

21

were classified as independent contractors and paid a
day rate.

SO ORDERED.


                              /s/ PATTI B. SARIS
                              Patti B. Saris
                              Chief United States District Judge