## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
_____
                               )
CHAD ROMERO, Individually      )
and on Behalf of All Others    )
Similarly Situated,            )
                               )
              Plaintiff,       )
                               )        Civil Action
        v.                     )        No. 18-10702-PBS
                               )
CLEAN HARBORS SURFACE RENTALS  )
USA, INC.,                     )
                               )
              Defendant.       )
_____)
```

## MEMORANDUM AND ORDER

September 11, 2019

Saris, C.J.

This is a collective action under the federal Fair Labor Standards Act ("FLSA") to collect unpaid overtime wages on behalf of solids control workers who worked for Defendant Clean Harbors Surface Rentals USA, Inc. ("Clean Harbors"). On March 21, 2019, the Court issued a Memorandum and Order ("March 2019 Order") denying Clean Harbors' motion to dismiss for failure to join a required party and granting Plaintiff Chad Romero's ("Romero") motion to conditionally certify a collective action under the FLSA. The Court conditionally certified the following collective action group:

> All solids control workers employed by, or working on
> behalf of, Clean Harbors during the past 3 years who
> were classified as independent contractors and paid a
> day rate.

Clean Harbors now moves for "clarification" of the March 2019 Order, requesting the Court expressly state that any solid control workers who signed arbitration agreements are not part of the group, meaning they will not receive notice of the FLSA collective action nor will they be allowed to opt-in to the action. Clean Harbors also seeks a protective order prohibiting Romero from inquiring as to the names and contact information of any such solids control workers. In the alternative, Clean Harbors asks the Court to stay the case and certify to the First Circuit the legal question of whether putative group members who signed arbitration agreements can receive notice in an FLSA collective action. Romero opposes all the relief sought by Clean Harbors. After hearing, Clean Harbors' motion is **ALLOWED IN PART** and **DENIED IN PART** (Dkt. No. 59).

## BACKGROUND

As detailed in the March 2019 Order, Clean Harbors contracts with third-party staffing companies to supply solids control workers for certain projects. One of the third-party staffing companies used by Clean Harbors is Smith Management and Consulting, LLC ("Smith"). Smith provides its clients in the oilfield services industry, like Clean Harbors, with

contractors, or "consultants," to work on oil and/or gas
drilling operation sites throughout the country. Clean Harbors
and Smith enter into consulting agreements which set the terms
and conditions under which Smith supplies contractors to Clean
Harbors' work sites.

Meanwhile, Smith and its contractors enter into Master
Service Agreements ("MSAs") that fix the terms of their
relationship. The MSAs incorporate by reference a Mutual Dispute
Resolution Agreement and Waiver of Jury Trial ("Arbitration
Agreement"), which is separately signed by Smith and its
contractors. The Arbitration Agreements provide that "[a]ll
disputes, claims or controversies . . . arising out of or
relating in any way to the services or work [a solids control
worker] seeks to perform or performs for or on behalf of [Smith]
or for or on behalf of any client of [Smith]" shall be submitted
to binding arbitration. Dkt. No. 61-5 ¶ 2. The claims that must
be submitted to arbitration include "all claims arising under
federal, state or local statutory or common law," specifically
including those "for unpaid or withheld wages" and "any claim
under any other laws governing compensation and overtime such as
the [FLSA]." Id. ¶ 3. Further, the Arbitration Agreements
provide that "there shall be no right or authority for any
claims to be arbitrated on a class, mass or collective action
basis." Id. ¶ 9. Finally, the Arbitration Agreements state that

any arbitration will be governed by the American Arbitration Association's Employment Rules and Mediation Procedures ("AAA Rules").

In total, 136 solids control workers that worked for Clean Harbors during the relevant period were supplied by Smith and signed Arbitration Agreements ("Arbitration Workers"). This motion concerns whether Romero may send notice of this FLSA collective action to the Arbitration Workers.

## ANALYSIS

### I.  Merits

#### a.  *Clarification or Reconsideration?*

The parties dispute whether the present motion should be treated as one for clarification or reconsideration of the Court's March 2019 Order. As Clean Harbors points out, the Court did discuss the effect of arbitration agreements at the hearing on Romero's conditional certification motion. See Dkt. No. 56 at 24:21-25:4 ("[W]e'd obviously have to exclude anybody who had a class waiver and an [arbitration] agreement . . . ; but let's assume I just carve them out, although I'm not sure that applies to collective class actions . . . ."); id. at 38:5 ("Right, and [solid control workers subject to arbitration agreements with class waivers] can't come here."). And the parties agree that a solids control worker subject to a valid, enforceable arbitration agreement may not join this collective action. See

4

Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1632 (2018)

(enforcing arbitration agreement in FLSA collective action).

Therefore, the Court clarifies that the collective action group

certified by the March 2019 excludes solids control workers

subject to valid, enforceable arbitration agreements. The notice

materials should include the following revised group definition,

which has been agreed upon by the parties:

> All Solids Control Technicians employed by, or working
> on behalf of, Clean Harbors during the past 3 years
> who were classified as independent contractors and
> paid a day rate, excluding any Solids Control
> Technicians who are bound by an enforceable
> arbitration agreement.

But Clean Harbors' motion raises another related issue that

was not squarely before the Court at the time of Romero's motion

for conditional certification. The parties now contest whether

the Arbitration Workers should receive notice of this collective

action even though they ultimately may not be able to

participate in the case because of their Arbitration Agreements.

Although Clean Harbors did not press this issue in opposing

Romero's conditional certification motion, the Court will

nonetheless address it now that it has been raised. See Ruiz

Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 81 (1st Cir. 2008)

(noting that district courts have "substantial discretion and

broad authority" in addressing motions for reconsideration); cf.

Deutsche Bank Nat'l Tr. Co., v. Pike, 916 F.3d 60, 67 (1st Cir.

2019) (approving of district court's decision to address merits of legal arguments raised in motion for reconsideration rather than holding moving party to "stringent standard for this type of motion").

     *b.  Notice Issue*

     District courts around the country have generated conflicting answers to the question of whether workers who signed arbitration agreements can receive notice of an FLSA collective action. Compare, e.g., Williams v. Omainsky, No. 15-0123-WS-N, 2016 WL 297718, at *8 (S.D. Ala. Jan. 21, 2016) (declining to exclude workers with signed arbitration agreements because they retained a right to receive notice of collective action), Gordon v. TBC Retail Grp., Inc., 134 F. Supp. 3d 1027, 1039 n.9 (D.S.C. 2015) (declining to exclude workers with signed arbitration agreements because to do so would "prematurely assume[] that such arbitration agreements are enforceable"); Amrhein v. Regency Mgmt. Servs., LLC, No. CIV. SKG-13-1114, 2014 WL 1155356, at *10 (D. Md. Mar. 20, 2014) (declining to exclude workers with signed arbitration agreements because it was not possible to determine which, "if any, would be subject to valid and binding arbitration"), with, e.g., Hudgins v. Total Quality Logistics, LLC, No. 16 C 7331, 2017 WL 514191, at *4 (N.D. Ill. Feb. 8, 2017) (excluding workers with signed arbitration agreements from collective action group definition after finding

that arbitration agreements were valid and enforceable); Adami
v. Cardo Windows, Inc., 299 F.R.D. 68, 79 n.6 (D.N.J. 2014)
(excluding workers with signed arbitration agreements from
collective action group definition because named plaintiff, who
had not signed such an agreement, lacked standing to contest the
agreements' validity); Daugherty v. Encana Oil & Gas (USA),
Inc., 838 F. Supp. 2d 1127,1133 (D. Colo. 2011) (excluding
workers with signed arbitration agreements from collective
action group definition).

In February 2019, while Romero's conditional certification
motion was still pending, the Fifth Circuit in In re JPMorgan
Chase & Co., 916 F.3d 494 (5th Cir. 2019), became the first
circuit court to answer the question. JPMorgan held "that
district courts may not send notice to an employee with a valid
arbitration agreement unless the record shows that nothing in
the agreement would prohibit that employee from participating in
the collective action." Id. at 501. Clean Harbors asks the Court
to follow the Fifth Circuit's lead and exclude the Arbitration
Workers from receiving notice of this collective action. The
seminal Supreme Court case on FLSA notice procedures is
Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989). In
Hoffman-La Roche, the Supreme Court confirmed that trial courts
have discretion to facilitate notice to potential plaintiffs in
FLSA collective actions. See 493 U.S. at 170. The primary

objective of court-facilitated notice was the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [wrongdoing]." Id. Court-facilitated notice was justified because "the broad remedial goal of the [FLSA] should be enforced to the full extent of its terms." Id. at 173.

In JPMorgan, the Fifth Circuit reasoned that giving notice to workers subject to arbitration agreements "who cannot ultimately participate in the collective 'merely stirs up litigation,' which is what Hoffmann-La Roche flatly proscribes." 916 F.3d at 502 (citing Hoffmann-La Roche, 493 U.S. at 181 (Scalia, J., dissenting)). The Court observes, however, that the concern about stirring up litigation was expressed by the Hoffman-La Roche dissent, not the majority opinion. To the extent the Hoffman-La Roche majority was concerned about trial courts engaging in "the solicitation of claims," it cautioned only that they "must be scrupulous to respect judicial neutrality" and "must take care to avoid even the appearance of judicial endorsement of the merits of the action." Id. at 174. Nowhere in the majority's opinion did it suggest that trial courts were required to make sure that the only workers receiving notice of an FLSA collective action were those actually capable of joining the action. See Hoffman-La Roche,

493 U.S. at 170 ("We confirm the existence of the trial court's
discretion, not the details of its exercise.").

That approach would incentivize defendants to raise any
number of individualized defenses at the notice stage of an FLSA
collective action to filter out potential group members "who
cannot ultimately participate in the collective [action]."
JPMorgan, 916 F.3d at 502. That would inevitably delay the
litigation (as it has done here) and run counter to the
majority's warning in Hoffman-La Roche that courts should steer
clear of merits issues in facilitating FLSA notice. See Hoffman-
La Roche, 493 U.S. at 174. Thus, the Court finds that it is
within its discretion under Hoffman-La Roche to facilitate
notice to the Arbitration Workers even though some of them might
be banned from joining this collective action because they are
subject to valid, enforceable Arbitration Agreements.

The practical problems with addressing the enforceability
of arbitration agreements are illustrated by this case. The
Fifth Circuit recognized that workers could not be excluded from
receiving notice of an FLSA collective action merely because
they signed an arbitration agreement. Instead, it required that
district courts conduct a preliminary inquiry into the validity
of the arbitration agreements at the conditional-certification
stage. See JPMorgan, 916 F.3d at 503 ("Where a preponderance of
the evidence shows that the employee has entered into a valid

arbitration agreement, it is error for a district court to order notice to be sent to that employee as part of any sort of certification."). To this end, Clean Harbors has submitted evidence that purportedly establishes the validity of the Arbitration Agreements for all 136 Arbitration Workers. This evidence consists of three sample Consulting Agreements, a sample MSA, a sample Arbitration Agreement, and an affidavit from Smith's Managing Director, Corey Smith, averring that the samples of the MSA and Arbitration Agreement are representative of those signed by other Arbitration Workers. Both the MSA and the Arbitration Agreement are signed by the original named plaintiff in this case, Trent Metro, who has since settled his claims against Clean Harbors and who cannot possibly join this action.

This is not enough to establish by a preponderance of the evidence that the Arbitration Agreements for all 136 Arbitration Workers are valid. See Camp v. Bimbo Bakeries USA, Inc., No. 18-CV-378-SM, 2019 WL 1472586, at *3 (D.N.H. Apr. 3, 2019) (declining to reconsider conditional certification order on the basis of JPMorgan because defendant failed to produce sufficient evidence to establish validity of arbitration agreements of the covered workers). The problem is compounded by the fact that Romero has no way of meaningfully contesting the validity of the Arbitration Agreements since he does not yet know the identity

of any of the Arbitration Workers or the circumstances in which
they signed their Arbitration Agreements. Nor is it clear that
Romero has standing to contest the validity of arbitration
agreements for solid control workers who have not yet opted into
this action. See Adami, 299 F.R.D. at 79 n.6. There has been no
discovery on point.

In any case, as Clean Harbors points out, the Arbitration
Agreements reserve for arbitration questions of validity and
enforceability. See Awuah v. Coverall N. Am., Inc., 554 F.3d 7,
11 (1st Cir. 2009) (concluding that arbitration agreement
adopting AAA Rules gave the arbitrator the exclusive authority
to resolve issues of validity and enforceability). In other
words, the Court lacks authority to adjudicate the validity of
the Arbitration Agreements. For these reasons, the Court cannot
conclude that all the Arbitration Workers are subject to valid,
enforceable arbitration agreements.

Therefore, the Court will not exclude the Arbitration
Workers from receiving notice of this collective action. The
Court also denies Clean Harbors' request for a protective order.[1]

---

[1]    Finally, Romero requests that the Court not only deny the
protective order but also order that the Clean Harbors produce
the contact information, including telephone numbers and email
addresses, for the Arbitration Workers. The Court notes,
however, that there is apparently also a dispute as to whether
the Arbitration Workers were paid a day rate, which is a
prerequisite for being part of the collective action group. Dkt.

The more sensible approach is for Plaintiff to send notice to the Arbitration Workers who were paid a day rate. Any that wish to join this action may challenge the validity and/or enforceability of their Arbitration Agreements through individualized arbitration proceedings. If their agreements are found to be either invalid or unenforceable, they may then join the collective action. Otherwise, the Arbitration Workers must pursue any FLSA claims through arbitration. Clean Harbors will be free to move to compel arbitration or seek other appropriate relief should any of the Arbitration Workers join the collective action without first arbitrating the validity and enforceability of their Arbitration Agreements. To this end, the parties have submitted a revised, agreed-upon notice form that clarifies that solids control workers with enforceable arbitration agreements will not be allowed to join the collective action. The Court approves the revised notice form.

## II.   **Certification**

In the alternative, Clean Harbors asks that the Court stay the case and certify the notice question to the First Circuit for interlocutory review. Pursuant to 28 U.S.C. § 1292(b), the Court may certify an interlocutory order for appeal where (1) the order "involves a controlling question of law,"

---

No. 67 at 1 n.1. The current record is inadequate for the Court to resolve this dispute.

(2) there "is substantial ground for difference of opinion" regarding the question, and (3) an immediate appeal "may materially advance the ultimate termination of the litigation". "A question of law is 'controlling' if reversal would terminate the action." Meijer, Inc. v. Ranbaxy Inc., 245 F. Supp. 3d 312, 315 (D. Mass. 2017). There is "substantial ground for difference of opinion" when a "matter involves 'one or more difficult and pivotal questions of law not settled by controlling authority.'" In re Zofran (Ondansetron) Prods. Liab. Litig., 235 F. Supp. 3d 317, 319 (D. Mass. 2017) (quoting Philip Morris Inc. v. Harshbarger, 957 F. Supp. 327, 330 (D. Mass. 1997)). "[T]he requirement that an appeal may materially advance the ultimate termination of the litigation is closely tied to the requirement that the order involve a controlling question of law." Harshbarger, 957 F. Supp. at 330 (quoting 16 Charles Alan Wright et al., Federal Practice and Procedure § 3930 (2d ed. 1996)). "Section 1292(b) is meant to be used sparingly, and appeals under it are, accordingly, hen's-teeth rare." Camacho v. P.R, Ports Auth., 369 F.3d 570, 573 (1st Cir. 2004); see also McGillicuddy v. Clements, 746 F.2d 76, 77 n.1 (1st Cir. 1984) (confirming that interlocutory certification "should be used sparingly and only in exceptional circumstances").

Here, the first and third requirements of § 1292(b) are not satisfied. The Arbitration Workers represent only a subset of

13

the solids control workers in the conditionally certified collective action group. That means regardless of whether notice is sent to the Arbitration Workers, at least some solids control workers will be sent notice and this case will move forward. Since answering the question of whether FLSA notice may be sent to workers who signed arbitration agreements cannot possibly terminate the action, it is not controlling. Relatedly, if the Court were to stay the case while Clean Harbors pursued an interlocutory appeal, the termination of the litigation would be delayed rather than advanced. Therefore, the Court denies Clean Harbors' request that the case be stayed and that this order be certified for interlocutory review. The parties shall move forward with giving notice to the collective action group consistent with the March 2019 Order as modified herein.

## ORDER

    For the reasons discussed above, Clean Harbors' motion is **ALLOWED IN PART** and **DENIED IN PART** (Dkt. No. 59).

SO ORDERED.

                                    /s/ PATTI B. SARIS
                                    Hon. Patti B. Saris
                                    Chief United States District Judge